MARWA M. RIFAHIE, ESQ. (SBN 280777)
    mrifahie@cair.com
PATRICIA C. SHNELL, ESQ. (SBN 316183)
    pshnell@cair.com
**COUNCIL ON AMERICAN-ISLAMIC RELATIONS-CA**
2180 West Crescent Ave., Ste. F
Anaheim, California 92801
Tel. (714) 776-1177 | Fax (714) 776-8340

Attorneys for Plaintiff
Noor Hussain

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NOOR HUSSAIN,<br><br>   *Plaintiff*,<br><br>   vs.<br><br>COUNTY OF RIVERSIDE; RIVERSIDE COUNTY SHERIFF'S OFFICE; RIVERSIDE COUNTY SHERIFF CHAD BIANCO in his official capacity; RIVERSIDE COUNTY FORMER SHERIFF STAN SNIFF in his official capacity; DOES 1-15 in each of their individual and official capacities<br><br>   *Defendants*. | Case No.:  5:19-cv-00564<br><br><br>**COMPLAINT FOR DAMAGES FOR VIOLATIONS OF CIVIL RIGHTS UNDER 18 U.S.C. § 1983, VIOLATION OF RELIGIOUS LAND USE AND INSTITUTIONALIZED PERSONS ACT AND SUPPLEMENTAL STATE-LAW CLAIMS**<br><br><br>**DEMAND FOR JURY TRIAL** |

1

**INTRODUCTION**

1.      Plaintiff Noor Hussain is a practicing Muslim American who was denied the right to wear her religious headwear, *hijab*, and otherwise religiously cover herself by the Riverside County Sheriff's Office and its deputies, from the time of her booking on May 30, 2018, until her release from Riverside County jail on June 1, 2018. While in the custody of the County of Riverside, Ms. Hussain was strip searched by female deputies and then forced to wear a jumpsuit that exposed her bare arms and was denied the right to cover her hair. Ms. Hussain repeatedly informed the deputies of her religious need to remain covered. Regardless, she was forced to appear uncovered before several men who were not related to her, including officers, inmates, and members of the public, before having her *hijab* restored to her. Though Ms. Hussain continued to protest having her arms exposed, Riverside County sheriff's deputies refused to provide her with alternative covering during her entire time in County custody, even though she had been thoroughly searched and did not pose any valid security concerns.

2.      Moreover, Ms. Hussain was detained during the month of Ramadan, which Muslims observe by fasting, refraining from food and water, from sunrise to sunset. Ms. Hussain informed deputies of her need to be provided with food and water after sunset, to perform the religious act of breaking her fast, however she was not provided with an appropriate meal on May 30, 2018. As such, due to her religion, Ms. Hussain was denied food and water from the time of her detention, midafternoon May 30, 2018, until the morning of May 31, 2018.

3.      Finally, Ms. Hussain suffers from diabetes and low blood pressure, which she requires medication to treat. Although she notified deputies of these medical needs, she was denied her medications during the entirety of her detention. As a result of the foregoing deprivations of the free exercise of her religion and right to medical care, Ms.

Hussain suffered severe discomfort, humiliation, and emotional distress. By this Complaint, Ms. Hussain seeks relief from the substantial burdens that the County of Riverside, its officers, and its agents unlawfully imposed on the practice of her religion.

## VENUE AND JURISDICTION

4.     This action arises under 42 U.S.C. § 1983, the laws and Constitution of the United States, and the laws and Constitution of the State of California. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343, 42 U.S.C. § 2000cc-2(a), and directly under the Constitution. This Court has supplemental jurisdiction under 28 U.S.C. § 1367(a).

5.     Venue is proper under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## PARTIES

6.     Plaintiff Noor Hussain is 53 years-old and at all times relevant to this complaint, resided in San Jacinto, California.

7.     Ms. Hussain is a practicing Muslim and an adherent of the Islamic faith. In accordance with her religious beliefs and as a part of the exercise of her religion, Ms. Hussain wears a headscarf known as the *hijab*.  The word *hijab* comes from the Arabic word "hajaba," which means to hide or screen from view or to cover.  Ms. Hussain's *hijab* covers her hair, ears, neck, and part of her chest when she is in public and when she is in the presence of men who are not members of her immediate family. Ms. Hussain's religious belief in covering extends to her arms and legs, and she genuinely feels it is a violation of her faith to appear before men not in her immediate family with her arms or legs uncovered.

8.     According to her Islamic faith, Ms. Hussain also observes the month of Ramadan, the holy month for Muslims. The dates for observing Ramadan are determined by the Lunar calendar and change slightly each year. In 2018 Ramadan began May 15, 2018 and ended June 14, 2018. As a Muslim, Ms. Hussain observes

Ramadan through fasting by abstaining completely from consuming any food or drinks between dawn and sunset.

9.      Ms. Hussain also suffers from diabetes and low blood pressure. Both of these conditions require her to take daily medicine to treat.

10.     Defendant County of Riverside (also referred to as "the County") is a legal and political entity established under the laws of the State of California, with all of the powers specified and necessarily implied by the Constitution and the laws of the State of California and exercised by various government agents and officers. In this case, the County acted through its agents, employees, and servants, including the policymakers for defendant Riverside County Sheriff's Department ("RCSD"), and through defendants Sheriff Chad Bianco ("Bianco"), the Sheriff of the RCSD, and former Sheriff Stan Sniff ("Sniff"), the former Sheriff of the RCSD. Defendants Bianco and Sniff are sued in their official capacities. Defendants County of Riverside and RCSD are collectively referred to as "the entity defendants."

11.     At all relevant times, defendants County of Riverside, RCSD, Bianco, Sniff, and each of them, possessed the power and authority to adopt policies and prescribe rules, regulations, and practices affecting all facets of the training, supervision, control, employment, assignment and removal of individual deputies of the RCSD, including those individual deputies of the RCSD charged with operating and overseeing the booking and jailing of detainees and arrestees at the County's jail facilities.

12.     Does 1 through 10, are the RCSD deputies and supervising deputies who deprived Ms. Hussain her right to wear a *hijab* and otherwise remain covered while in County custody; as well as denying her food, water, and medication. These individual defendants are charged with protecting the health, safety, and Constitutional rights of detainees and arrestees at County of Riverside detention facilities, including Ms. Hussain, and to assure that said actions, policies, rules, regulations, customs, practices

and procedures of the RCSD complied with the laws and constitutions of the United States and the State of California.

13.     At all relevant times, County of Riverside was the employer of each of the individually named Doe defendants, and the County of Riverside jails where Ms. Hussain was detained were County of Riverside-run facilities. On information and belief, the RCSD receives federal financial assistance as well as financial assistance from the State of California.

14.     The true names of defendants Does 1 through 15 are presently unknown to Plaintiff, who therefore sues each of these defendants by such fictitious name; but upon ascertaining the true identity of a defendant Doe, Plaintiff will amend this complaint or seek leave to do so by inserting the true and correct name in lieu of the fictitious name. Plaintiff is informed and believes, and on the basis of such information and belief alleges, that each defendant Doe herein is in some manner responsible for the injuries and damages alleged herein. Each individually named Doe defendant, like each individually named defendant, acted under color of law and within the scope of his or her agency and employment with County of Riverside as a sheriff's deputy, sergeant, detective, captain, lieutenant, commander, supervisor, and/or civilian employee, and agent, policy maker, and representative of the County of Riverside. Each Doe is sued in both his/her official and individual capacities.

## EXHAUSTION

15.     Pursuant to California Government Code § 910, Plaintiff presented to defendant County of Riverside the appropriate claim for damages. The claim was rejected and thereby denied. This action was filed timely.

## FACTS PERTINENT TO ALL CAUSES OF ACTION

16.     Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 15 of this complaint with the same force and effect as if fully set forth herein.

17.     Plaintiff Noor Hussain was arrested on May 30, 2018. On that day, Ms. Hussain, while at her home in San Jacinto, California, was involved in a dispute with her seventeen-year-old son that resulted in the police being called to Ms. Hussain's residence.

18.     When defendant, Doe 1, a RCSD deputy, arrived at the scene Ms. Hussain tried to explain to the deputy that she and her son had been in an argument and that he had left the house and she was preparing to have guests over for a fundraiser. The deputy then told Ms. Hussain to get into the squad car and took her down to the police station. Once she was in the back of the car Defendant Doe 1 placed her in handcuffs. At no point was she informed that she was under arrest or read her Miranda rights. Despite her confusion, Ms. Hussain cooperated with the officers with whom she interacted.

19.     As previously stated, Ms. Hussain is a practicing Muslim and wears a *hijab* in accordance with her sincerely-held religious beliefs. Many observant Muslim women follow an interpretation of the Quran that makes it obligatory for women to cover their heads and much of their body for the sake of dignity, modesty, and bodily integrity.

20.     After reaching the detention center, Ms. Hussain repeatedly requested to make a phone call in order to inform the attendees of the fundraiser about her situation. However, she was not permitted to use the phone.

21.     While Ms. Hussain was in the waiting room at the sheriff's station she was repeatedly searched by defendant Doe 2, a RCSD deputy. Ms. Hussain requested all searches to be done in private however Defendant Doe 2 conducted multiple pat downs in front of the people in the station's waiting room. Each time Ms. Hussain expressed that she felt this to be inappropriately revealing and in violation of her religious beliefs.

22.     Ms. Hussain was then taken into a private room where she was strip searched by a female RCSD Deputy, Doe 3. After the strip search Ms. Hussain was given a jumpsuit to wear. She was not given anything to cover her head. Ms. Hussain told Doe 3 that she was a practicing Muslim woman and based on her faith she could

not be seen by other men without her *hijab*. Ms. Hussain also asked for something to cover her exposed arms as the jumpsuit had short sleeves. Doe 3 did not produce something for Ms. Hussain to cover her head with until several men had seen her uncovered. Moreover, despite making her religious needs clear, Ms. Hussain was never given anything to cover her arms. Thus, in violation of her religious beliefs, her arms were exposed the entirety of her time in detention.

23.   Ms. Hussain had been thoroughly searched and was not acting in any manner that justified the removal of her *hijab*.

24.   While Ms. Hussain's head was uncovered, Doe 4, a RCSD officer, continued to conduct the intake process. Due to being severely traumatized at the time, Ms. Hussain does not fully recall all of what this entailed, but she believes that her booking photo was taken while her *hijab* was off. Despite having told Doe 1, Doe 2, Doe 3, and Does 4 through 8 (other RCSD officers) multiple times that she wears the *hijab* in accordance with her religious practice, RCSD officers ignored her pleas, prohibited her from covering her head with any religious headwear or fabric, and denied all of Ms. Hussain's requests to cover her head.

25.   Furthermore, Does 1 through 8 retaliated against Ms. Hussain for asserting her rights to complain to law enforcement and to wear religious headwear, and these Doe defendants made intimidating statements and actions against Ms. Hussain in order to chill her speech.

26.   RCSD deputies eventually brought Ms. Hussain to a cell with other female detainees. Ms. Hussain was not given anything to cover her arms. Throughout this time, Ms. Hussain felt exposed, humiliated, and violated. Though she had made multiple requests for something to cover her in accordance with her religious beliefs, Does 2 through 8 retaliated against Ms. Hussain for her assertion of her legal rights and prevented her from donning anything to cover her arms.

27.   Once Ms. Hussain was placed in the cell she informed RCSD Deputy, Doe 4, that she was fasting in accordance with Islam's holy month of Ramadan. She

informed Doe 4 that she would need to be provided with food and water after sundown so that she could break her fast in accordance with her religious beliefs. Despite fully alerting deputies to this need, Ms. Hussain was not provided with appropriate food or drink. Rather, she was forced to break her fast by drinking water from the cell's sink, which was located next to a toilet, and by eating someone else's food scraps. She was not provided with food or drink until the morning of May 31, 2018.

28.    On May 31, 2018, Ms. Hussain was removed from her cell by RCSD Deputy, Doe 5. Since she had not been given her blood pressure or diabetes medication, despite having had her blood sugar checked the previous day, Ms. Hussain refused to have her blood checked. Doe 5 then returned Ms. Hussain to her cell while intentionally jerking her arms back in a movement that caused Ms. Hussain much pain and discomfort.

29.    In the aftermath of these incidents, Ms. Hussain felt exposed, humiliated, and violated by what had happened, including having her body forcibly exposed. She cried throughout the ordeal and experienced humiliation when both her religious beliefs and personal integrity were violated. She felt that the male officers and male inmates had seen parts of her body that, according to her religious beliefs, they should not have seen.

## DEFENDANTS' CULPABILITY

30.    On information and belief, Defendants County of Riverside, the RCSD, Bianco, Sniff, and Does 1 through 15, its employees and agents, forced Ms. Hussain to remove her religious coverings pursuant to a custom, practice, or official policy that permits RCSD deputies and officials to strip the religious coverings of detainees in the booking process and while in County custody. The County does not have a policy that sets forth the circumstances in which detainees are permitted to wear items to cover themselves for religious purposes. The lack of written policy to protect detainees' religious freedom to wear religious coverings is itself a policy and/or custom, which permits RCSD deputies to flat-out ban religious coverings. As evidence of this

customary policy, Defendant Does effectively stated that Ms. Hussain was not allowed to maintain her religious beliefs while in detention.

31.     Defendants County of Riverside, the RCSD, Bianco, Sniff, and Does 1 through 15, and its employees and agents caused the forcible removal of Ms. Hussain's hijab, and thereafter prohibited her from wearing religious coverings pursuant to a custom, practice, or official policy promulgated and implemented by the County of Riverside, the RCSD, Bianco, Sniff, and Does 1 through 10, which was ratified by the County of Riverside or which the County of Riverside failed to address.

32.     As the entity defendants have no written policy forbidding its employees from removing detainees' religious coverings or describing the certain scenarios when detainees would be permitted to wear religious headwear and other clothing, and since entity defendants, Bianco, Sniff, and supervisory sheriff's deputies (certain Doe defendants) have not trained RCSD officers to permit detainees to wear religious coverings while in County custody, RCSD officers have filled this vacuum of a lack of training with a custom and practice of denying detainees the right to wear religious coverings. As a consequence, Doe defendants were free to exert their own personal religious prejudices and strip Ms. Hussain of her right to cover her head and body while in County custody.

33.     In contrast to the RCSD policy, custom, or practice of effectively forcing Muslim women to remove their religious coverings while in County custody, the Federal Bureau of Prisons ("BOP") has enacted a policy accommodating "religious headwear" providing that "[s]carves and head-wraps (*hijab*s) are appropriate for female inmates." *See* U.S. Dep't of Justice, Federal Bureau of Prisons, Program Statement re: Religious Beliefs and Practices (Dec. 31, 2004).[1] The federal policy authorizes female Muslim inmates to wear a "*hijab*," and it states that such "[r]eligious headwear is worn throughout the institution." *Id*.  The policy is intended to protect "the religious rights of

---

[1] http://www.bop.gov/policy/progstat/5360_009.pdf

inmates of all faiths" while maintaining "the security and orderly running of the institution." *Id*.

34.   The United States Department of State permits individuals to maintain their religious headwear in official passport photographs. According to the Department of State website, this accommodation should be granted to individuals who "submit a signed statement that verifies that the hat or head covering in [the person's] photograph is part of recognized, traditional religious attire that is customarily or required to be worn in public."[2]

35.   As of 2012, the U.S. Citizenship and Immigration Services ("USCIS") permits religious headwear to be worn in photographs. Specifically, "USCIS will accommodate an individual who wears headwear as part of their religious practices."[3] If the headwear casts a shadow over the individual's face making identification impossible, USCIS will "ask an individual to remove or adjust portions of religious headwear that covers all or part of the individual's face." *Id*.  If the individual is asked to remove all or part of their religious headwear, USCIS will offer a private room or screened area and a same gender photographer. *Id*. If USCIS is unable to accommodate with a private room and same gender photographer, USCIS will offer to reschedule the appointment until an accommodation can be made. *Id*.

36.   Like the BOP, State Department, and USCIS, other states have enacted policies accommodating religious headwear. For example, the Kentucky Department of Corrections permits "[s]carves and head wraps to be authorized for female inmates who have identified a religious preference of Muslim, Jewish, Native American, Rastafarian, and those of the orthodox Christian tradition." This includes the *hijab*. *See* Kentucky Corrections, Policies and Procedures, Policy No. 23.1, at 5 (filed Jan. 9, 2007). Similarly, the New York Department of Correctional Services permits inmates to wear

---

[2] https://ru.usembassy.gov/u-s-citizen-services/passports/photos
[3] https://www.uscis.gov/sites/default/files/USCIS/Laws/Memoranda/2012/August%202012/Accommodating%20Religious%20Beliefs%20PM.pdf

religious headwear. *See* State of New York, Dep't of Correctional Servs., Directive No. 4202, Religious Programs and Practices at 9 (October 19, 2015).

37.     In contrast to the County's policy, custom, or practice prohibiting the use of religious headwear, counties neighboring the County of Riverside have enacted policies accommodating religious headwear. For instance, following a lawsuit by a Muslim woman forced by local deputies to remove her headwear while in custody in San Bernardino County's West Valley Detention Center, San Bernardino County agreed in 2008 to adopt a policy accommodating the right of Muslim women to wear headscarves in San Bernardino County jails.[4]

38.     As another example, the Orange County Sheriff's Department, as of 2013, does not require Muslim women in custody to remove their headscarves in front of male officers, and provides temporary headscarves. This occurred following a suit by a Muslim woman placed in North County Justice Center for several hours after being forced to remove her headscarf.[5]

39.     Additionally, after a 2016 lawsuit by a Muslim woman whose *hijab* was removed while in custody overnight, the Long Beach Police Department has adopted procedures permitting female arrestees and inmates to maintain their *hijab* at all times while in custody, including during booking photos.[6]

40.     These examples show a growing national consensus that there is no basis to require the removal of religious headwear for official government photos, or while in criminal custody.

41.     The entity defendants, Bianco, Sniff, and Riverside County employees and agents, Doe defendants, forced Plaintiff to appear in front of men and to take her booking photo without her religious headwear, pursuant to a custom, practice, or official policy to disregard Muslim religious practices.

---

4 https://www.aclu.org/news/san-bernardino-county-agrees-allow-religious-head-scarves-county-jails
5 http://www.ocregister.com/articles/religious-495992-county-court.html
6 www.presstelegram.com/2016/12/25/long-beach-police-change-policy-will-allow-muslim-women-to-wear-headscarves-while-in-custody/

42. Federal legislation has been enacted to demonstrate our robust national commitment to the free exercise of religion and to prohibit the government from placing a substantial burden on religious beliefs. This legislation, which reflects an increased awareness of and support for religious interests in practices like covering, "shall be construed in favor of a broad protection of religious exercise, to the maximum extent permitted by … the Constitution." 42 U.S.C. § 2000cc-3(g). The statute, the Religious Land Use and Institutionalized Persons Act ("RLUIPA") even "may require a government to incur expenses in its own operations to avoid imposing a substantial burden on religious exercise." 42 U.S.C.§ 2000cc-3(c).

43. The Supreme Court has held that an Arkansas Department of Corrections policy that prevented a Muslim inmate from wearing a tightly cropped beard substantially burdened the prisoner's religious exercise under RLUIPA. *See Holt v. Hobbs*, 135 S.Ct. 853 (2015). The Fifth Circuit has applied *Holt* to religious headwear, holding that a Texas state prison could not carry its burden under RLUIPA with respect to its denial of a Muslim inmate's request to wear a *kufi* (a type of cap often worn by Muslim men) throughout a Texas prison's facilities. *See Ali v. Stephens*, 822 F.3d 776, 797 (5th Cir. 2016).

44. In contravention of RLUIPA and the tolerant, inclusive policies it embodies, the RCSD's booking policy has had an extensive and corrosive effect on Muslim women in County of Riverside, and other County of Riverside residents who wear religious head coverings and are arrested by the RCSD.

45. Moreover, the booking policy is a profound manifestation of insensitivity towards religious practices and interests. In today's politically polarized environment where top-level public officials make disparaging comments about Muslims, and American Muslims are often perceived as being non-American or un-American, it is incumbent on the RCSD to increase awareness of and sensitivity towards the Muslim-American community by setting an example in their arrest and booking practices, not further perpetuating mistrust and disrespect.

46.     Defendants' forcible removal of Ms. Hussain's religious coverings pursuant to the above-described custom, practice, or policy violated Ms. Hussain's right to the free exercise of her religion, violated her rights under federal law, violated her rights under the California Constitution and laws, and caused her extreme mental and emotional distress.

## FIRST CAUSE OF ACTION

### Violation of Religious Land Use and Institutionalized Persons Act
### 42 U.S.C. §§ 2000cc et seq.

(Against All Defendants)

47.     Plaintiff incorporates the above paragraphs as though fully set forth here.

48.     At all relevant times, Plaintiff was in the custody of the RCSD, and in jails operated by the County. At all relevant times Plaintiff was under the direct supervision and control of her jailers, deputies of the RCSD.

49.     Under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc(1), "No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution … even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person – (A) is in furtherance of a compelling governmental interest; and (B) is the least restrictive means of furthering that compelling governmental interest." *See* 42 U.S.C. § 2000cc(1).

50.     While in the custody of the RCSD, and jails operated by the County, an institution that receives federal funding, Defendants substantially burdened Ms. Hussain's religious exercise by doing, encouraging, assisting, ratifying, and/or with deliberate indifference failing to prevent the following: (a) removing her religious headwear, in the presence of male officers and male inmates, when female officers were available to accommodate Plaintiff, (b) prohibiting her from covering her arms for the duration of her detention, and (c) failing to provide her with food and water at a time

that allowed her to eat while maintaining her religious beliefs.

51.     By their actions in denying Ms. Hussain religious coverings, Defendants imposed a substantial burden on Plaintiff's religious exercise by forcing Plaintiff to violate a fundamental tenet of her faith and a central component of her religious practice. "A Muslim woman who must appear before strange men she doesn't know, with her hair and neck uncovered in a violation of her religious beliefs, may feel shame and distress. This is precisely the kind of 'mischief' RLUIPA was intended to remedy." *Khatib v. County of Orange*, 639 F.3d 898, 907 (9th Cir. 2011) (Gould, J., concurring). That substantial burden neither furthers a compelling governmental interest nor is the least restrictive means of furthering a compelling governmental interest.

52.     Accordingly, Defendants have violated Plaintiff's rights under RLUIPA. As a result of Defendants' conduct, Plaintiff suffered, and continues to suffer, extreme shame, humiliation, mental anguish, and emotional distress.

## SECOND CAUSE OF ACTION

### Violation of Civil Rights - 42 U.S.C. § 1983

(First Amendment - Against All Defendants)

53.     Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs as if re-alleged herein.

54.     At all relevant times, Plaintiff was in the custody of the RCSD, and in a jail operated by the County. At all relevant times Plaintiff was under the direct supervision and control of her jailers, deputies of the RCSD.

55.     The entity defendants, individual defendants, and Doe defendants, while acting under color of law, deprived Plaintiff of her civil rights under the First Amendment by acting and/or allowing each other to act in a threatening or violent manner and otherwise engaging in conduct that inhibited Plaintiff's freedom of speech and right to petition for redress of grievances and to complain about her treatment during the booking process, and that such actions undertaken by defendants would chill

a person of ordinary firmness from continuing to engage in freedom of speech.

56.     The above acts and omissions, while carried out under color of law, have no justification or excuse in law, and instead constitute a gross abuse of governmental authority and power that shock the conscience. They are fundamentally unfair, arbitrary, and oppressive, and unrelated to any activity which governmental officers may appropriately and legally undertake in the course of protecting persons or ensuring order. The above acts and omissions were consciously chosen from among various alternatives.

57.     The conduct of entity defendants and Doe defendants was willful, wanton, malicious, or done with reckless disregard for the rights and safety of Plaintiff.

58.     Plaintiff specifically alleges that Defendants' complained of acts and/or omissions were within each of their control, and within the feasibility of each of them, to alter adjust, and/or correct so as to prevent some or all of the unlawful acts and injuries complained of herein by Plaintiff.

59.     As a direct and proximate result of the aforesaid acts, omissions, customs, practices, policies and decisions of the defendants, Plaintiff suffered extreme and severe mental anguish, and was injured as alleged above, entitling her to recover compensatory and punitive damages (except as to the entity defendants) according to proof.

## THIRD CAUSE OF ACTION

### Violation of Civil Rights - 42 U.S.C. § 1983

(Fourteenth Amendment - Against Does 2 to 8)

60.     Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs as if re-alleged herein.

61.     At all relevant times, Plaintiff was in the custody of the RCSD, and in a jail operated by the County. At all relevant times Plaintiff was under the direct supervision and control of her jailers, deputies of the RCSD.

62.     Defendant Doe 3, while acting under color of law, deprived Plaintiff of her

civil rights under the Fourteenth Amendment to the United States Constitution when she forced Plaintiff to appear in front of men without appropriate religious coverings on her head and arms. The harm persisted when Does 2 through 8 denied Ms. Hussain's repeated requests for some type of clothing to cover her arms. Does 2 through 8, while acting under color of law, then persisted in denying Ms. Hussain any type of arm-covering while she was in RCSD custody.

63.     Moreover, Defendant Doe 5's use of force to return Ms. Hussain to her cell was partially retaliation for Ms. Hussain's attempts to assert her religious rights. The force used when returning Ms. Hussain to her cell was harmful, unwanted, and excessive.

64.     Does 2 through 8's actions were unreasonable, unjustified, and offensive to human dignity. They were also with deliberate indifference to the rights of Plaintiff.

## FOURTH CAUSE OF ACTION

### Entity Liability – Deprivation of Civil Rights
### 42 U.S.C. § 1983

(Against the County, RCSD, Sheriff Bianco, former Sheriff Sniff, and Certain Does)

65.     Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs as if re-alleged herein.

66.     Plaintiff is informed and believes, and thereon alleges that, at all times herein mentioned, defendants County, RCSD, and the relevant policy makers Bianco, Sniff, and certain County officials (unnamed certain Does) maintain or tolerate unconstitutional customs, practices, and policies that facilitated the deprivation of Plaintiff's rights under the First and Fourteenth Amendment, as alleged above.

67.     Additionally, Plaintiff is informed and believes and thereon alleges that, at all times herein mentioned, defendants County, RCSD, and the relevant policymakers Bianco, Sniff, and certain County officials and/or officers within the RCSD (certain Does), with deliberate indifference, and conscious and reckless disregard to the safety,

16

security and constitutional rights of Plaintiff, maintained, enforced, tolerated, ratified, permitted, acquiesced in, and/or applied, among others, the following policies, practices and customs: (a) failing to adequately train, supervise, and control custodians of jail inmates/detainees in properly permitting inmates/detainees to maintain religious practices; (b) failing to establish policies and procedures to permit jail inmates/detainees to maintain religious practices; (c) failing to adequately train, supervise, and control custodians of jail inmates in the proper manner to remove religious headwear worn by jail inmates/detainees; (d) failing to establish policies and procedures to protect arrestees, detainees, and inmates from being stripped of their religious rights; (e) failing to adequately train, supervise, and control custodians of jail inmates from retaliating against those inmates who assert their right to maintain their religious beliefs; (f) failing to adequately train, supervise, and control custodians of jail inmates in properly preventing male officers and inmates from viewing female inmates who are uncovered, in violation of sincerely held religious beliefs.

68.    The individual defendants and Doe defendants acted under color of law and within the course and scope of their employment by the County and RCSD.

69.    The individual and Doe defendants deprived Plaintiff of her particular rights under the First Amendment, and Doe 2 through 8 deprived Plaintiff of her rights under the Fourteenth Amendment, as alleged above.

70.    The policies, customs, and practices described above are evidenced by the treatment of Plaintiff by RCSD deputies, namely, that County officials: (a) forced Plaintiff to appear in front of men not in her family without her *hijab* and with her arms exposed; (b) denied Plaintiff's requests for any type of arm-covering, and; (c) denied Plaintiff food and water at a time that allowed her to maintain her religious practices. The above actions are evidence of entity defendants' systematic failure to comply with their constitutional obligations.

71.    Defendants had either actual or constructive knowledge of the deficient policies, practices, and customs alleged in the paragraphs above. Doe defendants,

individual County officials, acted with deliberate indifference to the foreseeable effects and consequences of these policies, practices, and customs with respect to the constitutional rights of Plaintiff and other female arrestees and detainees similarly situated.

72.     As a direct and proximate result of the aforesaid acts, omissions, customs, practices, policies, and decisions of the aforementioned defendants, Plaintiff was injured and sustained damages as alleged above. Accordingly, Plaintiff seeks compensatory damages from all the entity defendants, Bianco, and Sniff, and punitive damages from defendants certain Does, in their individual capacities only.

## FIFTH CAUSE OF ACTION

### Violation of the California Constitution – Article 1, Section 4

(Against All Defendants)

73.     Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs as if re-alleged herein.

74.     Article I, Section 4 of the California Constitution provides: "Free exercise and enjoyment of religion without discrimination or preference are guaranteed."

75.     By their actions described above, including that Doe defendants, RCSD deputies: (a) removing her religious headwear, in the presence of male officers and male inmates, when female officers were available to accommodate Plaintiff, (b) prohibiting her from covering her arms for the duration of her detention, and (c) failing to provide her with food and water at a time that allowed her to eat while maintaining her religious beliefs. In doing so, Defendants denied Plaintiff the right to free exercise of her religion without discrimination, as guaranteed by Article I, Section 4 of the California Constitution.

76.     As a result of Defendants' conduct, Plaintiff suffered, and continues to suffer extreme humiliation, shame, mental anguish, and emotional distress.

//

18

## SIXTH CAUSE OF ACTION

### Violation of Cal. Civ. Code § 52.1

(Against All Defendants)

77. Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs as if re-alleged herein.

78. California's Tom Bane Act, California Civil Code § 52.1, provides a civil action for damages for a person whose enjoyment of federal or state rights has been interfered with by a person who, whether or not acting under color of state law, interferes with that right by threats, intimidation, or coercion. *See* Cal. Civ. Code § 52.1(a), (b).

79. Defendant Does, RCSD deputies: (a) forced Plaintiff to appear in front of men not in her family without her *hijab* and with her arms exposed; (b) denied Plaintiff's requests for any type of arm-covering, and; (c) denied Plaintiff food and water at a time that allowed her to maintain her religious practices.

80. The above behavior amounted to contact highly offensive to her bodily integrity, thus Doe defendants unlawfully interfered with Plaintiff's federal and state rights to the free exercise of her religion in violation of California's Tom Bane Act. These rights are guaranteed to Plaintiff by the First Amendment of the United States Constitution and by Article I, Section 4 of the Constitution of the State of California.

81. As a result of Defendants' threats, coercion, or intimidation, Plaintiff was harmed in that she was forced to be exposed to men not part of her immediate family in violation of her religious beliefs, was denied food and water, and suffered emotional distress because of Defendants' actions described above.

## SEVENTH CAUSE OF ACTION

### Violation of Cal. Civ. Code § 51.7

(Against All Defendants)

82. Plaintiff incorporates the above paragraphs as though fully set forth here.

83.     California's Ralph Unruh Civil Rights Act, California Civil Code §§ 51.7, 52(b), protects individuals from hate violence on account of religion, including physical assault, and provides civil remedies including actual damages, punitive damages, civil penalties, and attorney's fees. *See* Cal. Civ. Code §§ 51.7, 52(b).

84.     Doe defendants, RCSD deputies, battered, assaulted, and threatened Plaintiff in violation of California's Ralph Unruh act in that they: (a) forced Plaintiff to appear in front of men not in her family without her *hijab* and with her arms exposed; (b) denied Plaintiff's requests for any type of arm-covering, and; (c) denied Plaintiff food and water at a time that allowed her to maintain her religious practices.

85.     As a result of Defendants' threats, coercion, or intimidation, Plaintiff was harmed in that she was stripped of an essential aspect of her religious practice, made to stand uncovered in front of men not part of her immediate family (in violation of her sincerely held religious beliefs), denied food and water, and suffered emotional distress due to the violation of her Constitutional rights.

## PRAYER FOR RELIEF

Plaintiff therefore respectfully requests that the Court enter a judgment, including, but not limited to:

  a.   Compensatory damages in an amount to be proven at trial;

  b.   Punitive damages against certain individual Doe defendants in an amount to be proven at trial;

  c.   Nominal damages;

  d.   Costs and reasonable attorneys' fees;

  e.   Such additional and further relief as the Court deems just and equitable.

*//*

DATED:  March 29, 2019

**COUNCIL ON AMERICA-ISLAMIC RELATIONS-CA (CAIR-CA)**

By:   */s/ Patricia Shnell*
      Patricia Shnell
      Attorney for Plaintiff,
      NOOR HUSSAIN

## JURY DEMAND

Plaintiff Noor Hussain hereby demands trial by jury on all issues so triable.

DATED:  March 29, 2019

**COUNCIL ON AMERICA-ISLAMIC RELATIONS-CA (CAIR-CA)**

By:   */s/ Patricia Shnell*
      Patricia Shnell
      Attorney for Plaintiff,
      NOOR HUSSAIN